UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TARA J. ROUGHT, | Case No. 3:12-cv-05704-RJB-KLS |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN. Commissioner of Social Security, [1] | Noted for July 26, 2013 |
| Defendant. | |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On July 28, 2009, plaintiff filed an application for SSI benefits, alleging disability as of May 14, 2009, due to a bipolar disorder, a posttraumatic stress disorder ("PTSD"), depression, a

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the docket accordingly.**

REPORT AND RECOMMENDATION - 1

personality disorder, and an obsessive compulsive disorder. See Administrative Record ("AR") 20, 140, 155.  That application was denied upon initial administrative review on December 21, 2009, and on reconsideration on February 25, 2010. See AR 85, 96.  A hearing was held before an administrative law judge ("ALJ") on February 24, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 35-82.

In a decision dated March 25, 2011, the ALJ determined plaintiff to be not disabled. See AR 20-29.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 6, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 1; see also 20 C.F.R. § 416.1481.  On August 10, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. See ECF #3.  The administrative record was filed with the Court on October 22, 2012. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, or in the alternative for further administrative proceedings, because the ALJ erred in failing to:

(1) find she had "severe" impairments consisting of PTSD, a borderline personality disorder and headaches;

(2) properly evaluate the findings and opinions of treating physician Karin Barkin, M.D., examining psychologist Norma L. Brown, Ph.D., non-examining psychologists Leslie Postovoit, Ph.D., and Bruce Eather, Ph.D., and treating mental health counselor Laura Lee Nastri, M.A.;

(3) properly discount plaintiff's credibility concerning her subjective complaints; and

(4) find her disabled at step five of the sequential disability evaluation

REPORT AND RECOMMENDATION - 2

process.[2]

For the reasons set forth below, the undersigned agrees the ALJ erred by improperly evaluating the opinions of Dr. Barkin, Dr. Brown and Ms. Nastri, and therefore in finding her to be not disabled at step five. In addition, although the ALJ also erred in evaluating the medical evidence in the record in regard to the issue of the severity of plaintiff's PTSD and borderline personality disorder, the undersigned finds that error to be harmless.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is

---

[2] The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.

REPORT AND RECOMMENDATION - 3

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [3]

I.   The ALJ's Step Two Determination

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step

---

[3] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

At step two in this case, the ALJ found plaintiff had a severe impairment consisting of a major depressive disorder. See AR 22.  Plaintiff argues that in light of Ms. Nastri's late March 2010 opinion, which Dr. Barkin also signed in mid-March 2011, that she is "unable to maintain sufficient stability at this time to maintain a 40 hour per week schedule" due at least in part to her PTSD (AR 16), that impairment should have been found to be severe as well.  The undersigned agrees in light of the ALJ's failure to properly evaluate that opinion as discussed in greater detail below.  Given the ALJ's additional failure to properly evaluate Dr. Brown's opinion that plaintiff had a number of marked to severe mental functional limitations again due in part to her PTSD as well as her personality disorder, this latter condition also should have been deemed to be severe by the ALJ.  In both respects, therefore, the ALJ erred at step two.

Any such error, however, the undersigned finds to be harmless.  An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error would not have affected "ALJ's ultimate decision."). As noted by defendant, where a claimant is not found not disabled at step two, and the allegedly severe impairments are considered later in the sequential disability evaluation process, any error by the ALJ in failing to properly consider an impairment at that step is deemed harmless. See Hubbard v. Astrue, 2010 WL 1041553 *1 (9th Cir. 2010) (citing Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (error in failing to list bursitis at step two harmless, where ALJ's decision showed any limitations posed thereby was considered later in sequential disability evaluation

REPORT AND RECOMMENDATION - 5

process); see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005). This is what the ALJ did in her decision in this case. See AR 22, 26-28.

II.     The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in

the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Brown

In early July 2009, Dr. Brown evaluated plaintiff, and found she had a severe[4] limitation in her ability to relate appropriately to co-workers and supervisors, respond appropriately to and tolerate the pressures and expectations of a normal work setting and maintain appropriate behavior in a work setting, and a marked[5] limitation in her ability learn new tasks, exercise judgment and make decisions, perform routine tasks, interact appropriately in public contacts, and care for herself. See AR 309.  The ALJ accorded this opinion "little weight," however,

---

[4] Defined as an "[i]inability to perform one or more basic work-related activities." AR 309.

[5] Defined as a "[v]ery significant interference" in the ability to perform "basic work-related activities." AR 309.

REPORT AND RECOMMENDATION - 7

because plaintiff's performance during Dr. Brown's evaluation of her was "inconsistent with her functioning in activities of daily living as established by the longitudinal record," because Dr. Brown assessed plaintiff "on this one occasion" with "no indication that she administered validity testing" (AR 26), and because the opinion was "inconsistent with the objective medical evidence of record" (AR 28).

The ALJ instead gave "significant weight" to the opinion of Cheryl O. Hart, Psy.D. (AR 28), who evaluated plaintiff in early November 2009, and who opined in relevant part:

> . . . [The c]laimant is considered to be capable of interacting in a socially appropriate manner as evidenced by her behavior in [the] psychological evaluation; she may have intermittent mild to moderate intrusions of anxiety, overwhelm, and momentary distress due to her mental condition; however, familiarity with expectations and tasks would be expected to reduce her possible episodes of distress. She may have intermittent difficulties working with the public due to depressive symptoms. In light of her [activities of daily living], [mental status examination], and self-report, she is considered to have sufficient persistence, pace, and concentration to succeed in a competitive workplace provided that she works in a low-stress, low-anxiety workplace doing non-mathematical tasks. She is considered, at minimum, capable of performing simple, repetitive tasks out of direct contact with the public with minimal to moderate contact with coworkers. She is able to understand, remember, and execute 3- and 4-step commands. She is considered able to adapt to change and note and appropriately respond to threats and risks in her environment.

AR 343. Specifically, the ALJ found this opinion was "based on a thorough understanding of [plaintiff's] background and past medical history and [wa]s compatible with" the opinion of Dr. Postovoit and Dr. Eather. AR 28.

The undersigned agrees with plaintiff that it was improper for the ALJ to discount Dr. Brown's opinion on the basis that Dr. Brown assessed plaintiff only "on this one occasion" and with "no indication that she administered validity testing." AR 26. First, the Commissioner often has relied on these one-time evaluations in determining whether a claimant is disabled. Indeed, as plaintiff points out, the opinion of Cheryl Hart, Psy.D., upon which the ALJ relies in large part

REPORT AND RECOMMENDATION - 8

to find plaintiff not disabled, constitutes such an evaluation.[6]  See AR 26-28, 339-43.  Plaintiff is also correct in pointing out there is no requirement that validity testing, though perhaps helpful, must be performed by an examining psychologist before his or her opinion is granted weight, and again Dr. Hart herself performed no such testing.  See AR 339-43.

The ALJ's statement that Dr. Brown's opinion is "inconsistent with the objective medical evidence of record," furthermore, is insufficiently specific to form a valid basis for rejecting it. AR 28; see also Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).[7]  The ALJ also was not sufficiently specific in stating plaintiff's performance during Dr. Brown's evaluation of her was "inconsistent with her functioning in activities of daily living as established by the longitudinal record." AR 26.  That is, while there is evidence in the record indicating plaintiff may be more functional than indicated during Dr. Brown's evaluation of her in terms of her activities of daily living,[8] it is not at all clear which of those activities the ALJ relied on or the extent to which they

---

[6] The undersigned further finds the ALJ's other stated reasons for giving greater weight to the opinion of Dr. Hart – i.e., that it was "based on a thorough understanding of [plaintiff's] background and past medical history and [wa]s compatible with the" opinion of Drs. Postovoit and Eather (AR 28) – to be equally without adequate support in the record.  First, there is no indication that Dr. Brown did not have an equally thorough understanding of plaintiff's background and past medical history, although Dr. Hart's discussion thereof may have been more detailed. See AR 305-11, 339-43.  While it is true that where an examining medical source's opinion is based on independent clinical findings it is within the ALJ's discretion to disregard the conflicting opinion of another examining medical source, here this stated reason at least on its face applies equally to both Dr. Brown's and Dr. Hart's evaluations.  Second, while the opinion of Drs. Postovoit and Eather may be consistent with that of Dr. Hart, the former opinion by itself does not constitute substantial evidence. See Lester, 81 F.3d at 830-31; Tonapetyan, 242 F.3d at 1149.

[7] As the Ninth Circuit stated in Embrey:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. . . .

Id. (internal footnote omitted).

[8] See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion).

REPORT AND RECOMMENDATION - 9

demonstrate an ability to perform full-time work.[9] See AR 24, 26, 43-53, 63-64, 67-68, 178-82, 194, 204, 254, 264, 270, 272, 274, 278, 280, 282, 286, 290-95, 297, 308, 324, 342, 368, 375, 377, 391-92, 394.  In other words, without more detailed discussion of the evidence in the record concerning plaintiff's activities of daily living, it is not possible for the Court to conduct a proper review of this stated basis for rejecting Dr. Brown's opinion.

B.   Dr. Barkin and Ms. Nastri

As discussed above, the record contains a mental medical source statement completed by Ms. Nastri in late March 2010, in which plaintiff was found to be "unable to maintain sufficient stability at this time to maintain a 40 hour per week schedule." AR 16.  Ms. Nastri opined as well that plaintiff would miss an average of four or more days of work per month, and that she had several moderate and one marked mental functional limitations. See AR 14-16.  That form, also as discussed above, was signed by Dr. Barkin in mid-March 2011. See AR 16.  It was given "little weight" by the ALJ due to plaintiff being "substantial[ly] functional in activities of daily living, as established by the longitudinal record," and because Ms. Nastri did "not consider the situational stressors that the Claimant has voluntarily assumed in her personal interactions, which produce a great deal of her anxiety and stress." AR 27.

For the same reasons discussed above in regard to Dr. Brown's opinion, the statement by the ALJ that the opinion of Dr. Barkin and Ms. Nastri is entitled to little weight due to plaintiff's activities of daily living is insufficiently specific, and prevents the Court from being able to do a proper review of the ALJ's determination here.  Similarly, the undersigned agrees with plaintiff that the ALJ also was insufficiently specific in failing to discuss the actual situational stressors she found Ms. Nastri did not adequately consider, and how those "voluntarily assumed" stressors

---

[9] See Smolen, 80 F.3d at 1284 n.7 (claimant's credibility concerning allegations of disability may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting").

REPORT AND RECOMMENDATION - 10

produced her anxiety and stress as opposed to the other factors noted by Ms. Nastri and the other medical sources in the record. Thus, here too the ALJ erred.

III.  The ALJ's Step Five Determination

If a disability determination "cannot be made on the basis of medical factors alone at step three of the sequential disability evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity to:

> **. . . perform a full range of work at all exertional levels but with the following nonexertional limitations: She is able to perform simple routine tasks (1 to 3 step), can work superficially with the public (can work in the same room or vicinity as the public but is not having to respond to their demands or requests), can work superficially with coworkers (cannot work in coordination with coworkers but can work in the same room/vicinity with coworkers), has sufficient concentration, persistence, and pace to work an 8-hour day if has [sic] low stress, low anxiety job (can meet average production standards and needs non-noisy**

REPORT AND RECOMMENDATION - 11

**environment, i.e., a room without a lot of people or without noisy machinery).**

AR 23-24 (emphasis in original).

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 77. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age and education as plaintiff – would be able to perform other jobs. See AR 78-79. Based on the vocational expert's testimony, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. See AR 28-29.

REPORT AND RECOMMENDATION - 12

Plaintiff argues the ALJ's hypothetical question failed to take into account many of the functional limitations she has that were found by her treating and examining medical sources. Because as discussed above the ALJ erred in evaluating the opinions of Dr. Brown, Dr. Barkin and Ms. Nastri, the undersigned agrees it is far from clear that the ALJ's assessment of plaintiff's residual functional capacity – and thus the hypothetical question the ALJ posed to the vocational expert, which is based on that assessment – is wholly accurate. On this basis, therefore, the step five determination made by the ALJ cannot stand. Given the opinions of Dr. Hart, Dr. Postovoit and Dr. Eather indicating much less significant functional limitations, however, it also is far from clear that a finding of disability is warranted here as argued by plaintiff.

V.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, they should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

REPORT AND RECOMMENDATION - 13

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because as discussed above issues still remain in regard to the medical evidence in the record concerning plaintiff's mental functional capabilities, and the record does not at this time support a finding of actual disability, remand to the Commissioner for further administrative proceedings is appropriate.

## CONCLUSION

For all the above reasons, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision to deny benefits and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 26, 2013**, as noted in the caption.

DATED this 9th day of July, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14